UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
YOLANDA PEREZ, o/b/o K.J.O.,       :

            Plaintiff,      :

                        **REPORT AND RECOMMENDATION**

       -against-      :

COMMISSIONER OF SOCIAL SECURITY,  :        13 Civ. 3153 (LTS) (KNF)

            Defendant.    :
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

      On May 7, 2013, Yolanda Perez ("Perez"), on behalf of her minor granddaughter K.J.O.,

commenced this action against the Commissioner of Social Security ("Commissioner"), seeking

review of an administrative law judge's ("ALJ") decision, dated April 26, 2012, finding K.J.O.

ineligible for Supplemental Security Income ("SSI") benefits, pursuant to Title XVI of the Social

Security Act ("SSA"), 42 U.S.C. § 1382c(a)(3)(c).  The complaint was accompanied by the

March 5, 2013 Notice of Appeals Council Action, denying review of the ALJ's April 26, 2012

decision.  On June 18, 2013, Perez filed an amended complaint, accompanied by exhibits post-

dating the ALJ's April 26, 2012 decision.  Before the Court is the Commissioner's motion for

judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The motion is unopposed.

## BACKGROUND

*Administrative Procedural History*

      Perez filed an SSI application alleging K.J.O.'s disability, with an onset date of

September 9, 2009.  Following a hearing, the application was denied, on February 23, 2011.  On

July 8, 2011, the Appeals Council vacated the February 23, 2011 decision and remanded the

matter, stating:

> At the hearing, the medical expert testified that there was not enough information
> to assess the severity of the claimant's academic problems, which would require a
> full psycho-educational evaluation.  No such evaluation was obtained.  Further,
> the evidence indicated that the claimant was more likely than not to fail the first
> grade for the second time due to her academic deficiencies. . . . Further evaluation
> is warranted in this case.

The Appeals Council directed that, upon remand, the ALJ obtain: (a) updated medical records

from the claimant's treating sources; (b) a psychological or psychiatric consultative evaluation;

and (c) if necessary, evidence from a medical expert to clarify the nature and severity of K.J.O.'s

impairments.

On remand, the record was augmented with K.J.O.'s educational records, a psychological

consultative examination and the testimony of: Dr. Louis Lauro ("Dr. Lauro"), the impartial

psychological expert; Perez; and K.J.O.  On April 26, 2012, the ALJ determined that K.J.O. has

not been disabled since September 9, 2009.  On March 5, 2013, the Appeals Council denied

review of the ALJ's April 26, 2012 decision, rendering it the final decision of the Commissioner.

This action followed.

### The ALJ's Decision

The issue before the ALJ was whether K.J.O. was disabled since September 9, 2009.

The ALJ found that K.J.O.: (1) was born on November 2, 2003; (2) was a preschooler on

September 9, 2009, and a school-age child when he rendered his determination; (3) has not

engaged in substantial gainful activity since September 9, 2009; (4) has a severe impairment,

learning disorder; (5) does not have an impairment or combination of impairments that meets or

medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P,

2

Appendix 1; (6) does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. §§ 416.924(d) and 416.926a; and (7) has not been disabled since September 9, 2009.

In determining whether K.J.O. has severe impairments, the ALJ determined that, notwithstanding Dr. Lauro's testimony that K.J.O. did not have any severe impairment, K.J.O. had a severe learning disability because the school records dating back to November 2010 indicate that K.J.O. repeated the first grade, was classified as having low average intelligence and placed in a special education program for a learning disability.  According to the ALJ, this condition has caused more than minimal functional limitation and is expected to persist for a continuous period of at least 12 months.

However, the ALJ found that K.J.O.'s asthma was not a severe impairment.  The treating source records from Dr. Lufta Kanam ("Dr. Kanam"), K.J.O.'s pediatrician, indicate that K.J.O.'s asthma was mild when it was first diagnosed, with no acute wheezing since November 2007.  Progress reports generated between June 2009 and July 2010 showed no complaints or acute attacks, except for a single episode of mild wheezing in July 2010, that improved with the use of Albuterol.  As Perez did not mention K.J.O.'s asthma during the hearing, the ALJ determined that K.J.O.'s asthma did not cause more than minimal functional limitations to K.J.O. that persisted for a continuous period of at least 12 months.  The ALJ also noted that Perez testified about some of K.J.O.'s symptoms, such as constant daily crying over "everything," which suggested to him that a psychological or psychiatric impairment might exist, but no medical evidence demonstrated the existence of a medically determinable mental impairment.  The ALJ determined that, with respect to satisfying the requirements of organic mental disorders, K.J.O. did not have a marked impairment in at least two of the following areas:

3

age-appropriate cognitive or communicative functions; age-appropriate social functioning; age-appropriate personal functioning and maintaining concentration, persistence or pace.

The ALJ considered all relevant evidence in the record in determining the degree of limitation in each of the six functional equivalence domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. He considered Perez's testimony that K.J.O. was frustrated with reading or her progress in school and that K.J.O. was in a special education program in school, since September 2011, having repeated the first grade, and that she benefitted from a 12-student class size with two teachers. No reports or complaints existed from K.J.O.'s teachers, since K.J.O. started attending the special education program, and Perez denied that K.J.O. had any problems with attending school, getting along with teachers, classmates or siblings, completing her homework, reading and writing. K.J.O. was able to follow one instruction at a time, she could dress, bathe and groom herself, and she could follow basic safety rules concerning the street and played with other children in the park. The ALJ noted that K.J.O. testified that she knew the days of the week and months of the year and had friends at school and home. She liked to play with her sister and watch television. K.J.O. also helped Perez with the household chores. However, while the ALJ found that K.J.O.'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, he found the statements concerning the intensity, persistence and limiting effects of these symptoms incredible to the extent they are inconsistent with finding that K.J.O. does not have an impairment or combination of impairments that functionally equals the listings in 20 C.F.R. §§ 416.924(d) and 416.92a.

The ALJ explained that, concerning K.J.O.'s learning disability, Dr. Kanam noted, on

January 21, 2010, that K.J.O. was not doing as well as before at school and had a short attention span.  By March 1, 2010, K.J.O. showed behavioral problems and her academics were deteriorating.

K.J.O.'s first-grade teacher, in K.J.O.'s second year as a first-grade student, Sara Aurich ("Aurich"), completed a questionnaire on November 3, 2010, denying that K.J.O. had poor frustration tolerance behavior, inappropriate social interaction behavior or problems in performing age appropriate self-care activities.  However, based on her observations, Aurich concluded that K.J.O. was functioning at an academic level below the first grade, did not complete tasks timely and had difficulty retaining large amounts of information.  K.J.O. completed the first grade in 2011 and had not been left behind since that time.

K.J.O. underwent a psychoeducational evaluation through the New York City Department of Education, between March 21, 2011, and March 23, 2011.  Her full-scale intelligence quotient was reported to be low average, except that her quantitative reasoning was average, visual spatial processing was borderline impaired or delayed and working memory was mildly impaired or delayed.  K.J.O. was assessed as particularly weak in retention, especially in the auditory channel.

On April 7, 2011, Aurich completed a questionnaire, noting that K.J.O. performed below first grade expectations in all areas and had retention problems.  In a Final Notice of Recommendation, dated May 23, 2011, the school's principal recommended that K.J.O. be placed in a special education class with a 12:1 student to teacher ratio.

Dr. Howard Tedoff ("Dr. Tedoff"), a psychologist, performed a consultative examination of K.J.O. on December 21, 2011.  Dr. Tedoff concluded that K.J.O.'s attention and concentration were mildly impaired based on difficulties with mathematical calculations, and her recent

memory was mildly impaired relative to her age; she could recite four digits forward, two backward and could recollect only one out of three objects after a five minute delay.  Dr. Tedoff concluded that K.J.O.'s cognitive functioning was below average and opined that she was learning in a manner consistent with borderline to low average intellectual functioning.

Dr. Lauro testified that K.J.O.'s school records mentioned below average intelligence. He noted an impairment in arithmetic reasoning.  Dr. Lauro opined that, while K.J.O.'s learning disability was a medically determinable impairment, and she was classified as a special education student, it did not qualify as a severe impairment.

The ALJ explained that he gave some weight to Dr. Lauro's testimony as an expert witness who reviewed the entire medical and educational chart and was present during the hearing at which K.J.O. and Perez testified.  The ALJ found that K.J.O. had the medically determinable impairment of a learning disability, based on Dr. Lauro's testimony, which K.J.O.'s school records and school performance establish was severe.  The ALJ also gave some weight to Dr. Tedoff's conclusion that K.J.O.'s impairment did not significantly interfere with her ability to function on a daily basis, except that she could not participate in regular education. The ALJ gave great weight to the two reports by Aurich, because Aurich is considered an important non-medical source and her statements are strongly considered in assessing the extent of K.J.O.'s limitations in each of the six functional equivalence domains.  The ALJ made the following findings concerning the limitations caused by K.J.O.'s impairments in the six functional equivalence domains:

<u>Acquiring and Using Information</u>

This domain concerns how well a child is able to acquire or learn information as well as use the learned information.  The ALJ determined that K.J.O. has a less than marked limitation

in acquiring and using information.  She has demonstrable educational difficulties, evidenced by her repetition of the first grade and by the low average intelligence quotient results obtained on formal testing, in early 2011.  However, the ALJ found that these problems do not rise to the level of marked impairment because no evidence existed suggesting that K.J.O. performed poorly since she was placed in the special education program.  The only examination after her placement in the special education program was performed by Dr. Tedoff, who noted no significant problems with K.J.O.'s ability to function within the special education setting.  The ALJ noted that K.J.O.'s placement in the special education program by itself does not satisfy the definition of a marked impairment, in light of the evidence that K.J.O. functioned well academically, since being classified as a special education student.

Attending and Completing Tasks

 This domain concerns how well a child is able to focus and maintain attention and how well she is able to begin, carry through and finish activities, including the mental pace at which activities are performed and the ease of changing activities.  The ALJ found that K.J.O. has a less than marked limitation in attending and completing tasks.  He explained that K.J.O. demonstrated academic limitations prior to her classification as a special education student.  However, since she started the special education program, no evidence exists that she persists with academic deficits that would significantly limit her abilities or that she would be held back again in school.

Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism and respects and takes care of the possessions of others.

7

The ALJ found that K.J.O. has no limitation in interacting and relating with others.  He noted that no such difficulty was described in Aurich's November 2011 questionnaire, and Dr. Tedoff observed no difficulty with personal interaction in his December 2011 consultative examination report.  Moreover, Perez described no limitation in K.J.O.'s ability to communicate or in her behavior with other people.  While Perez testified that K.J.O. had some problems expressing herself, this statement was rejected by the ALJ as unsupported by any objective findings in the contemporaneous records.

Moving About and Manipulating Objects

This domain concerns how well a child is able to move her body and manipulates objects. The ALJ found no limitation in this domain because it was not suggested by Aurich, Dr. Tedoff or Perez.

Caring for Yourself

This domain concerns how well a child maintains a healthy emotional and physical state.  The ALJ found no limitation in this domain because it was not suggested by Aurich, Dr. Tedoff or Perez.

Health and Physical Well-Being

This domain concerns the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's ability to move about and manipulate objects.  The ALJ found no limitation in this domain because it was not suggested by Aurich, Dr. Tedoff or Perez.

The ALJ determined that K.J.O. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning.  He concluded that K.J.O. was not disabled since

September 9, 2009.

***Defendant's Contentions***

The defendant contends that the ALJ concluded properly that K.J.O.'s asthma was not severe because Perez told him repeatedly that K.J.O.'s asthma was doing well with no recent symptoms. Dr. Kanam prescribed Albuterol as needed and described K.J.O.'s asthma as well-controlled, with infrequent symptoms and no wheezing since 2007. Moreover, when she saw Dr. Tedoff, K.J.O. was not taking any asthma medication.

The defendant contends that the ALJ concluded properly that K.J.O. did not have two marked limitations or one extreme limitation, and substantial evidence supports his findings with respect to the six functional equivalence domains. Concerning the acquiring and using information domain, Dr. Kanam assessed that K.J.O.'s cognitive skills were normal and Perez reported that K.J.O. achieved developmental milestones on time. Since K.J.O. has been in the special education program, she demonstrated increased improvement in her skills, and Dr. Tedoff observed normal insight and judgment, despite mildly impaired memory. With respect to the attending and completing tasks domain, the defendant asserts that Dr. Tedoff noted mild impairment in K.J.O.'s concentration and attention and concluded she could complete some age-appropriate tasks. Aurich indicated that K.J.O. did not exhibit poor frustration tolerance and Dr. Lauro assessed less than marked limitation in this domain. Perez testified that K.J.O. played games, cleaned her room, watched television, followed single step instructions and completed her homework without pushing. In connection with the remaining three domains, K.J.O. was never alleged to be significantly limited.

The defendant contends that the ALJ declined to credit Perez's allegations of greater dysfunction since the record contradicts them. For example, while Perez alleged that K.J.O. had

an asthma attack and used nightly breathing treatments, Dr. Kanam's notes showed that Perez denied recent asthma symptoms and she was only prescribed Albuterol as needed.  Similarly, while Perez testified that K.J.O. cried, sometimes all day, in response to a sibling taking her belongings or difficulty in completing homework, the school documents indicated that she loved to share and did not exhibit negative responses.  Perez also stated that K.J.O. did her homework without pushing.

The defendant maintains that new evidence submitted with the amended complaint does not warrant remand because it is not relevant to the period for which benefits were denied, since it is: (a) dated after April 26, 2012; (b) not retrospective in nature; and (c) immaterial. Moreover, although much of the new evidence post-dates the ALJ's April 26, 2012 decision, it pre-dates the Appeals Council's March 5, 2013 decision.  Perez did not assert good cause for failing to give this evidence to the Appeals Council.

## DISCUSSION

### *Legal Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

> Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

"An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Three steps are involved in determining whether a claimant under the age of 18 is disabled. See 20 C.F.R. § 416.924(a). First, it must be determined whether the claimant under the age of 18 is engaging in substantial gainful activity, and, if she is, she will be found not disabled regardless of her medical condition or age, education or work experience. See 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b). Second, it must be determined whether the claimant under the age of 18 has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 416.924(c). If the claimant does "not have a medically determinable impairment, or [the claimant's] impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," that claimant will be found not disabled. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment(s), the third step is to determine whether the claimant has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). If the claimant has "such an impairment(s), and it meets the duration requirement," the claimant will be found disabled. 20 C.F.R. § 416.924(a). If the claimant does not have "such an impairment(s), or if it does not meet the duration requirement," the claimant will be found not disabled. 20 C.F.R. § 416.924(a).

11

If the claimant has a severe impairment or combination of impairments that does not meet or medically equal any listing, it must be determined "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). "Functionally equals the listings" means that the claimant's "impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The claimant's functioning in the following six domains is considered: (1) "[a]cquiring and using information"; (2) "[a]ttending and completing tasks"; (3) "[i]nter-acting and relating with others"; (4) "[m]oving and manipulating objects"; (5) "[c]aring for yourself"; and (6) "[h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1).

When determining whether the claimant has a marked or an extreme limitation, the claimant's "functional limitations resulting from all of [the claimant's] impairments, including their interactive and cumulative effects" are considered based on all the relevant information in the case record. 20 C.F.R. § 416.926a(e)(1)(i). A finding of marked limitation is made when the claimant's "impairment(s) interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). A finding of an extreme limitation will be made when the claimant's "impairment(s) interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "'Extreme' limitation is the rating [given] to the worst limitations," but it "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i).

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that

there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding." 42 U.S.C. 405(g).  To obtain a remand based on new evidence, the plaintiff must

show that the evidence proffered is: (1) "'new' and not merely cumulative of what is already in

the record"; and (2) "material, that is, both relevant to the claimant's condition during the time

period for which benefits were denied and probative." Lisa v. Sec'y of Dep't of Health &

Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (citations omitted).  Additionally, the claimant

must show "good cause for her failure to present the evidence earlier." Id.  To be material, new

evidence must be such that "would have influenced the [Commissioner] to decide claimant's

application differently." Id.

***Application of Legal Standard***

        <u>Additional Evidence</u>

        As part of her amended complaint, Perez submitted exhibits post-dating the ALJ's April

26, 2012 decision.  Since these exhibits were not considered by the ALJ in rendering his April

26, 2012 decision, or by the Appeals Council in denying review of the ALJ's April 26, 2012

decision, they are considered additional evidence.  The additional evidence submitted by Perez is

not material because it is not relevant to K.J.O.'s condition during the time period for which

benefits were denied her.  The additional evidence concerns K.J.O.'s condition during the period

after the ALJ's April 26, 2012 decision, and includes: (i) an Individualized Education Program

projected to be implemented on March 6, 2013; and (ii) notes by "Provider/Counselor: Rene

Valentin," from Lincoln Medical and Mental Health Center, from June 2012 to June 2013.  The

evidence attached to the amended complaint is not retrospective.  Moreover, since some of the

additional evidence post-dates the ALJ's April 26, 2012 decision but pre-dates the Appeals

Council's March 5, 2013 denial of review of the ALJ's April 26, 2012 decision, Perez failed to

13

explain why she did not provide additional evidence to the Appeals Council before it reached its decision.  Thus, any medical condition subsequent to the ALJ's decision, which does not pertain to K.J.O.'s condition during the period at issue, is not material to her condition during the relevant period.  Accordingly, since the additional evidence is not material and no good cause was shown for failing to present it earlier, ordering that additional evidence be taken before the Commissioner is not warranted.

### Whether the ALJ's Decision Is Supported by Substantial Evidence

Substantial evidence supports the ALJ's finding that K.J.O. never engaged in substantial gainful activity because she is a minor child and never worked.  The ALJ's finding that K.J.O. has a severe impairment of learning disorder is supported by the school records.  The ALJ concluded properly that K.J.O.'s asthma was not severe, in light of the treating physician's finding that her asthma was mild when it was first diagnosed and the progress reports showing that, between June 2009 and July 2010, no complaints or acute attacks occurred, except for one episode for which medication was administered that improved the condition.  Given that Perez did not mention asthma during the hearing before the ALJ, substantial evidence supports the ALJ's finding that K.J.O.'s asthma was not severe.  The ALJ found properly that, despite Perez's testimony that K.J.O. had episodes of daily crying, no mood disorder was medically determinable from the records before him.  Moreover, the ALJ explained the weight given to various opinion evidence and the reasons for the weight given.

The ALJ's findings concerning six functional equivalence domains are supported by substantial evidence.  He determined properly that K.J.O. did not have two marked limitations or one extreme limitation in functioning in her activities.  The record supports the finding that K.J.O. had a less than marked limitation in acquiring and using information because her

14

cognitive skills were normal and showed improvement after she started attending the special education program.  K.J.O. also achieved all developmental milestones timely.  Substantial evidence indicates that K.J.O. had a less than marked limitation in attending and completing tasks because, despite Dr. Tedoff's observation that K.J.O.'s concentration and attention were mildly impaired, she was able to complete some age-appropriate tasks.  Aurich indicated in her report that K.J.O. did not exhibit poor frustration tolerance, and Perez testified that K.J.O. played games, cleaned her room, watched television, followed single step instructions and completed her work without pushing.  The ALJ determined properly that K.J.O. had no limitation in interacting and relating to others because the record shows that her communication, social and emotional skills were age appropriate.  Aurich indicated in her report that K.J.O.'s social interaction was normal and she was friendly, loved to share and respected others.  Moreover, Perez reported that K.J.O. played and got along with friends and siblings.  Substantial evidence supports the ALJ's finding that K.J.O. had no limitations in moving about and manipulating objects, caring for herself and with respect to health and physical well-being, because no such limitation was suggested by any evidence in the record.

The ALJ did not credit fully Perez's testimony about K.J.O.'s symptoms, since some of her allegations contradicted the record evidence.  For example, Perez alleged that K.J.O. cried, sometimes all day, in response to a sibling taking her belongings or difficulty completing homework, which contradicted her statement that K.J.O. completed her homework without pushing and the school documents indicating that K.J.O. loved to share and did not exhibit negative frustration response.  Thus, the ALJ's assessment of Perez's credibility was proper.  Accordingly, substantial evidence supports the ALJ's determination that K.J.O. was not disabled since September 9, 2009.

<u>Whether the ALJ's Decision Was Contrary To Law</u>

The ALJ followed the three steps of the sequential analysis required to be performed in determining disability for an SSI-benefits claimant under the age of 18.  At each of the three steps, the ALJ articulated and applied the correct legal standard in making his determinations. The Court perceives no legal error in the ALJ's determinations.  Thus, the ALJ's decision is not contrary to law.

## RECOMMENDATION

For the foregoing reasons, I recommend that the defendant's motion for judgment on the pleadings, Docket Entry No. 22, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 1320, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Swain.  ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will***

16

**preclude appellate review.**  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v.

Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                     Respectfully submitted,
     June 17, 2014

                                                 KEVIN NATHANIEL FOX

Copy mailed to:                               UNITED STATES MAGISTRATE JUDGE

Yolanda Perez

17